U.S. DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
RECEIVED - ALEXANDRIA

OCT 18 2007

ROBERT H. SHEMWELL, CLERK
BY _____
       DEPUTY

UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

ALEXANDRIA DIVISION

| | |
|---|---|
| RICHARD SHANE CROSS,<br>    Appellant | CIVIL ACTION<br>NO. CV06-1602-A |
| VERSUS | |
| MICHAEL J. ASTRUE, COMMISSIONER<br>OF SOCIAL SECURITY,[1]<br>    Appellee | JUDGE DEE D. DRELL<br>MAGISTRATE JUDGE JAMES D. KIRK |

## MEMORANDUM ORDER

Richard Shane Cross ("Cross") filed an application for disability insurance benefits ("DIB") on March 26, 2004 (Tr. p. 60), alleging a disability onset date of September 11, 2001, due to "back injury, knee injury, depression, anxiety, enlarged heart with frontal branch bundle blockage, [and] carpal tunnel in right hand." That application was denied by the Social Security Administration (Tr. p. 32). Since Cross filed a previous application on May 15, 2002, which was denied in a final decision with a finding that Cross was not disabled at any time through January 29, 2004 (Tr. p. 16), Cross' current claim was only reviewed for disability from January 30, 2004.

---

[1] On February 12, 2007, Michael J. Astrue became the Commissioner of Social Security. In accordance with Rule 43(c)(2) of the Federal Rules of Appellate Procedure, Commissioner Astrue is substituted for Jo Anne B. Barnhart as the appellee in this action.

As de novo hearing was held before an administrative law judge ("ALJ") on November 3, 2005, at which Cross appeared with his attorney and a vocational expert ("VE"). The ALJ found that, although Cross has "severe"[2] impairments of "disorders of the back and knee, enlarged heart, anxiety disorder, [and] depressive disorder," he has the residual functional capacity to perform a significant range of sedentary work, including work as a fishing reel assembler, a press clipping cutter and paster, or a surveillance system monitor, and was not a under a disability at any time through the date of the ALJ's decision on October 28, 2005 (Tr. pp. 24-25).

Cross requested a review of the ALJ's decision, but the Appeals Council declined to review it (Tr. p. 5), and the ALJ's decision became the final decision of the Commissioner of Social Security ("the Commissioner").

Cross next filed an appeal in this court for judicial review of the Commissioner's final decision. Cross raises the following issues for review on appeal:

> 1. The finding by the ALJ that Cross is capable of a significant range of sedentary work is not supported by substantial evidence on the record as a whole.

---

[2] An impairment can be considered as not "severe" only if it is a slight abnormality which has such a minimal effect on the claimant that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. Estran v. Heckler, 745 F. 2d 340, 341 (5th Cir. 1984). See also, Anthony v. Sullivan, 954 F.2d 289 (5th Cir. 1992).

2. The ALJ erred in not considering the Veteran's Administration rating of disability awarded to Cross.

In response to the appeal, the Commissioner filed an unopposed motion to remand pursuant to Sentence 4 of 42 U.S.C. § 405(g). Cross's appeal and the Commissioner's motion are now before the court for consideration.

### ALJ's Findings

To determine disability, the ALJ applied the sequential process outlined in 20 C.F.R. §404.1520(a) and 20 C.F.R. §416.920(a). The sequential process required the ALJ to determine whether Cross (1) is presently working; (2) has a severe impairment; (3) has an impairment listed in or medically equivalent to those in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("Appendix 1"); (4) is unable to do the kind of work he did in the past; and (5) can perform any other type of work. If it is determined at any step of that process that a claimant is or is not disabled, the sequential process ends. A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis. Greenspan v. Shalala, 38 F.3d 232, 236 (5th Cir. 1994), cert. den., 914 U.S. 1120, 115 S.Ct. 1984, 131 L.Ed.2d 871 (1995), citing Lovelace v. Bowen, 813 F.2d 55, 58 (5th Cir.1987).

To be entitled to benefits, an applicant bears the initial burden of showing that he is disabled. Under the regulations, this means that the claimant bears the burden of proof on the first four

steps of the sequential analysis. Once this initial burden is satisfied, the Commissioner bears the burden of establishing that the claimant is capable of performing work in the national economy. Greenspan, 38 F.3d at 237.

In the case at bar, the ALJ found that Cross has not engaged in substantial gainful activity since September 11, 2001, that his disability insured status expired on March 31, 2005, and that he has severe impairments including disorders of the back and knee, enlarged heart, anxiety disorder, and depressive disorder, but that he does not have an impairment or combination of impairments listed in or medically equal to one listed in Appendix 1 (Tr. p. 20). The ALJ also found that Cross is unable to perform his past relevant work as a roofing repairman, a correctional officer, a heavy truck driver, a tractor-trailer truck driver, a heating and air conditioner installer and servicer, and a mail carrier (Tr. p. 20).

At Step No. 5 of the sequential process, the ALJ further found that Cross has the residual functional capacity to perform the full range of sedentary work except as reduced by his inability to lift and/or carry more than twenty pounds occasionally and ten pounds frequently, stand and/or walk more than two hours in an eight hour day, and sit more than six hours in an eight hour day, only occasionally stoop, crouch, crawl and balance, must frequently use an assistive device for walking, cannot climb ladders, scaffolds, or be around dangerous machinery, should limit his interaction with

the general public, co-workers and supervisors, and is limited to one to two step instructions due to pain medication side effects (Tr. p. 24). The ALJ found that the claimant is a "younger individual" with a high school or equivalent education and no transferable work skills (Tr. pp. 24). The ALJ concluded Cross has the residual functional capacity to perform a significant range of sedentary work and can perform work which exists in significant numbers in the national economy, including work as a fishing reel assembler, a press clipping cutter and paster, and a surveillance system monitor. The ALJ concluded that Cross was not a under a disability as defined in the Social Security Act at any time through the date of the ALJ's decision on October 28, 2005 (Tr. pp. 24-25).

Commissioner's Motion to Remand

The Commissioner filed an unopposed motion to remand Cross's case to the SSA pursuant to Sentence 4 of 42 U.S.C. § 405(g).

In Shalala v. Shaefer, 509 U.S. 292, 296-7, 113 S.Ct. 2625, 2629, 125 L.Ed.2d 239 (1993), the Supreme Court stated the exclusive methods by which district courts may remand to the Commissioner are set forth in sentence four and sentence six of 42 U.S.C. § 405(g), as follows:

> "[4] The district court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the cause for a rehearing."

5

"[6] The court may, on motion of the Commissioner made for good cause shown before he files his answer, remand the case to the Commissioner for further action by the Commissioner, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm his findings of fact or his decision, or both, and shall file with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which his action in modifying or affirming was based."

Immediate entry of judgment (as opposed to entry of judgment after post-remand agency proceedings have been completed and their results filed with the court) is the principal feature that distinguishes a sentence-four remand from a sentence-six remand.[3] Shaefer, 509 U.S. at 297, 113 S.Ct. at 2629. Also, Istre v. Apfel, 208 F.3d 517 (5th Cir. 2000).

The Commissioner's requests a Sentence 4 remand in order to evaluate the disability rating of the Veterans' Administration pursuant to Social Security Ruling 06-3p, to further evaluate the

---

[3] A sentence six remand may be ordered in only two situations: where the Commissioner, for good cause shown, requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency. Shaefer, 509 U.S. at 297, 113 S.Ct. at 2629, citing Melkonyan v. Sullivan, 501 U.S. 89, 99-100, 111 S.Ct. 2157, 2163-64 (1991). Pursuant to the sixth sentence of 42 U.S.C. § 405(g), the court may at any time order additional evidence to be taken before the Commissioner, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding. See Istre, 208 F,3d at 519; Bradley v. Bowen, 809 F.2d 1054, 1058 (5th Cir. 1987); Chaney v. Schweiker, 659 F.2d 676, 679 (5th Cir. 1981).

severity of Cross' mental impairment during the relevant period, including a discussion of the weight given to Dr. Wilbourn's psychological evaluation, reassess Cross' residual functional capacity in light of the further evaluation of the VA rating and the severity of Cross' mental impairment during the relevant period, and to obtain supplemental vocational expert testimony if warranted. The Commissioner further states that she intends to consolidate Cross' latest applications for DIB, which are currently pending before the Appeals' Council. The Commissioner attached a proposed "final judgment" to remand Cross' case to the Commissioner pursuant to Sentence 4, and enter judgment in favor of the plaintiff pursuant to Sentence 4.

In order to effect a fourth sentence remand, this court must enter a final, appealable judgment which affirms, modifies or reverses the final decision of the Commissioner. Since the Commissioner's proposed judgment fails to "affirm, reverse or modify," it is inadequate to fulfill the requirements of a fourth sentence remand. See Istre, 208 F.3d at 519 (sentence four does not provide a "catch-all" provision for district court remands).

Since the Commissioner has not admitted her final decision was erroneous and warrants reversal or modification, a fourth sentence remand does not appear to be appropriate.

Instead, the Court infers from the language of the Commissioner's brief and proposed final judgment that the

Commissioner is actually requesting a sixth sentence remand. The Commissioner's proposed final judgment specifically states the Commissioner seeks remand to an Administrative Law Judge in order to take the steps set forth above. Thus, the Commissioner's request for remand is properly within the scope of sentence six because the motion was made before an answer was filed and is supported by good cause.

In the case at bar, the Commissioner has failed to allege good cause for remand. The Commissioner have not alleged there is new material evidence and there is good cause for not having introduced that evidence at the earlier administrative proceedings. Moreover, although the Commissioner filed her motion for remand prior to answering, the Commissioner has not alleged good cause for remand. Instead, the Commissioner only argues, essentially, that she wants to re-review Cross' application, without admitting now that her decision was erroneous.

Therefore, if a remand is warranted, the Commissioner's motion for remand will be granted under the sixth sentence.

Issue No. 1 - Residual Functional Capacity

First, Cross contends the finding by the ALJ that he is capable of a significant range of sedentary work is not supported by substantial evidence on the record as a whole. Cross points out that Dr. L. Wilbourn, a psychologist, conducted a comprehensive mental status examination and concluded Cross's ability to interact

8

satisfactorily with coworkers, supervisors, and the public "seems poor," his ability to sustain work activities on a regular basis "seems doubtful," and his ability to tolerate stress and pressures in a regular work setting "seems doubtful" (Tr. pp. 164-167). Cross argues that, since there is no conflicting medical evidence, the ALJ erred in substituting her non-expert opinion for that of Dr. Wilbourn in concluding that Cross can work. It is noted that Dr. Berzman, a non-examining psychologist who filled out a psychiatric review technique form on Cross after reviewing his medical records (Tr. pp. 172-185), reached essentially the same conclusions as Dr. Wilbourn. The ALJ, however, did not discuss Cross's ability to work forty hours per week, although she found Cross "should limit his interaction with the general public, co-workers and supervisors" (Tr. p. 22).

A claimant's impairments may cause physical or mental limitations that affect what he can do in a work setting. Residual functional capacity is a medical assessment, based upon all of the relevant evidence, of the work a claimant can perform despite his or her limitations. 20 C.F.R. §404.1545, §416.945. Although the burden of proof in a disability case is on the claimant to show that he is unable to perform his usual line of work, once that fact is established, the burden shifts to the Commissioner to show that the claimant is able to perform some other kind of substantial work available in the national economy. Herron v. Bowen, 788 F. 2d

1127, 1131 (5th Cir. 1986), and cases cited therein. Also, Babineaux v. Heckler, 743 F.2d 1065, 1067 (5th Cir. 1984). The Commissioner has the burden to establish a claimant's residual functional capacity. Leggett v. Chater, 67 F.3d 558, 565 (5th Cir. 1995).

When the ALJ found that Cross could not return to his past relevant work, the burden shifted to the Commissioner to show that Cross can perform other work in the national economy. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The law provides that the Commissioner can meet that burden if he can prove that Dove's residual functional capacity, age, education and previous work experience match those set out in any "Rule" of the Medical-Vocational Guidelines found in 20 C.F.R. Pt. 404, Subpt. P, App. 2 ("the grids") that directs a conclusion that the claimant is not disabled. The U.S. Supreme Court has upheld the use of these Guidelines by the Commissioner in lieu of calling a vocational expert to testify. Heckler v. Campbell, 461 U.S. 458, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983). Also, Harrell v. Bowen, 862 F.2d 471, 478 (5th Cir. 1988).

Generally, the Guidelines may not be applied when a claimant suffers solely from a nonexertional impairment. Pate v. Heckler, 777 F.2d 1022, 1026 (5th Cir. 1985), citing Martin v. Heckler, 748 F.2d 1027, 1034-35 (5th Cir. 1984). Also, Broussard v. Bowen, 828 F.2d 310, 313 (5th Cir. 1987); Fields v. Bowen, 805 F.2d 1168, 1170

(5th Cir. 1986).

For cases at the administrative law judge hearing level, the ALJ has the responsibility for deciding a claimant's residual functional capacity. 20 C.F.R. § 404.1546, § 416.946. The ALJ must perform a "function-by-function" assessment of the claimant's ability to engage in work-related activities when making his RFC determination. SSR 96-8p. When making the RFC determination an ALJ must consider objective medical facts, diagnoses and medical opinion based on such facts, and subjective evidence of pain or disability testified to by the claimant or others. 20 C.F.R. § 404.1545(a). Moreover, the ALJ must specify the evidentiary basis for his RFC determination. SSR 96-8p. Myers v. Apfel, 238 F.3d 617, 620 (5th Cir. 2001).

The Fifth Circuit has consistently held that once the ALJ determines that a claimant suffers from a nonexertional impairment that prevents him from performing his past relevant work, the Commissioner must produce expert vocational testimony or other similar evidence to establish that other jobs exist in the national economy that the claimant can perform. Fields v. Bowen, 805 F.2d 1168, 1170 (5th Cir. 1986), and cases cited therein. The value of a vocational expert is that he is familiar with the specific requirements of a particular occupation, including working conditions and the attributes and skills needed. A vocational expert is able to compare all the unique requirements of a

11

specified job with the particular ailments a claimant suffers in order to reach a reasoned conclusion whether the claimant can perform the specific job. Fields, 805 F.2d at 1170.

In Myers v. Apfel, 238 F.3d at 621, the Fifth Circuit stated it has long held that ordinarily the opinions, diagnoses, and medical evidence of a treating physician who is familiar with the claimant's injuries, treatments, and responses should be accorded considerable weight in determining disability. However, the opinion of the treating physician is not conclusive and the ALJ must decide the claimant's status. Accordingly, when good cause is shown, less weight, little weight, or even no weight may be given to the treating physician's testimony. The good cause exceptions recognized by the Fifth Circuit include disregarding statements that are brief, conclusory, not supported by medically acceptable clinical laboratory diagnostic techniques, or otherwise unsupported by the evidence. Myers, 238 F.3d at 621, citing Newton v. Apfel, 209 F.3d 448, 456 (5th Cir. 2000).

In the case at bar, the ALJ included the limitation of "limited interaction with general public, coworkers, supervisor" in the hypothetical question to the VE concerning what type of work was available (Tr. p. 289), to which the VE responded that such a person could work as a fishing reel assembler, a press clipping cutter and paster, or a surveillance system monitor (Tr. p. 290). However, the VE further testified that, after hearing Cross's

testimony, observing him during the hearing, and reviewing his records, she did not believe there were any jobs that Cross could perform and did not think he would be able to find a job, since employers would not be willing to employ a person who wears a brace and uses a walker (Tr. p. 291).

Since the ALJ did not explain why she implicitly rejected Dr. Wilbourn's conclusions that Cross probably could not "sustain work activities on a regular basis" and that he probably cannot "tolerate stress and pressures in a regular work setting," this case should be remanded for reconsideration of Dr. Wilbourn's findings and conclusions.

Issue No. 2 - VA Disability Rating

Cross contends the Commissioner failed to give appropriate weight to the VA rating of 100% service-connected disability. Cross submitted both the decision and the medical evidence on which the VA's disability rating is based. The ALJ failed to mention Cross's VA's disability rating and apparently did not consider the medical evidence from the VA Hospital.[4]

A VA rating of total and permanent disability is not legally binding on the Commissioner because the criteria applied by the two agencies is different, but it is evidence that is entitled to a

---

[4] Service-connected disability compensation is awarded for ten grades of disability based on percentage disability ratings of 10, 20, 30, 40, 50, 60, 70, 80, 90, or 100 percent. 38 C.F.R. § 1155.

13

certain amount of weight and must be considered by the ALJ. <u>Chambliss v. Massanari</u>, 269 F.3d 520, 522 (5th Cir. 2001). In <u>Rodriguez v. Schweiker</u>, 640 F.2d 682, 686 (5th Cir.1981), and its progeny, the Fifth Circuit stated that a VA disability determination is entitled to "great weight." In <u>Chambliss</u>, the Fifth Circuit explained that, while this is true in most cases, the relative weight to be given this type of evidence will vary depending upon the factual circumstances of each case. Since the regulations for disability status differ between the SSA and the VA, ALJs need not give "great weight" to a VA disability determination *if* they adequately explain the valid, specific reasons for not doing so. <u>Chambliss</u>, 269 F.3d at 522. The ALJ must consider both the agency's findings and the evidence underlying them. <u>Kinash v. Callahan</u>, 129 F.3d 736, 739 (5th Cir. 1997). Failure to do so constitutes reversible error. <u>Welch v. Barnhart</u>, 337 F.Supp2d 929, 935 (S.D.Tex. 2004), citing <u>Kinash</u>, 129 F.3d at 739.

Moreover, the Social Security Administration has stated that a disability determination by another governmental agency cannot be ignored and must be considered because it may provide insight into the individual's mental and physical impairments and show the degree of disability determined by these agencies based on their rules. S.S.R. 06-03p, "Considering Opinions and Other Evidence from Sources Who are Not 'Acceptable Medical Sources' in Disability

Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies."

Cross testified at his administrative hearing on November 3, 2005, that he had been assigned a 100% disability rating by the VA (Tr. pp. 274, 286). A copy of the VA's disability determination was sent to the ALJ on October 25, 2005, along with the medical records on which the determination was made (Tr. pp. 258-265). The VA granted Cross 100% service-connected disability benefits effective January 1, 2002 (Tr. p. 258), due to spondylolisthesis, spondylosis with bulging disc at L4-5, degenerative disc disease at L5-S1, and an annular tear at the L4 disc (Tr. p. 262).

The ALJ clearly failed to consider Cross' VA disability rating, since it is not mentioned anywhere in the ALJ's findings and conclusions. Since the VA rated Cross 100% disabled on the basis of his back problems alone, the ALJ's error appears to be potentially significant. While the medical records on which the VA disability rating was based may have pre-dated the time period which the ALJ considered for Cross's disability determination, they apparently were not irrelevant insofar as they showed the reason for Cross's continuing disability rating with the VA, which continued through the date of the ALJ's decision. Moreover, the reason for the disability rating, Cross's back problems, sheds light on the degree of his impairment due to his back problems. Since the ALJ considered more recent medical evidence that was

15

inconclusive as to whether Cross has a bulging disc, while the VA's medical records apparently definitively established the existence of a bulging disc, the ALJ's failure to consider this evidence is significant and constitutes reversible error.

Therefore, the Commissioner's motion for remand should be granted and the case remanded to the SSA for consideration of and appropriate weight to be given to the VA's disability rating and the evidence on which it is based.

### Order

IT IS ORDERED that the Commissioner's motion for remand is GRANTED and the case is REMANDED, pursuant to the sixth sentence of 42 U.S.C. § 405(g), to the Commissioner of Social Security for the purpose of evaluating the disability rating of the VA pursuant to SSR 06-03p, further evaluating the severity of plaintiffs' mental impairment during the relevant period, including a discussion of the weight given to Dr. Wilbourn's psychological evaluation, and reassessing Cross's residual functional capacity in light of the further evaluation of the VA rating and Cross's mental impairment, and to obtain supplemental vocational expert testimony as warranted.

The Commissioner SHALL FILE with the court any such additional and modified findings of fact and decision, and a transcript of the additional record and testimony upon which her action in modifying or affirming was based, **on or before January 16, 2008.**

THUS DONE AND SIGNED in Alexandria, Louisiana, on this 17th day of October, 2007.

JAMES D. KIRK
UNITED STATES MAGISTRATE JUDGE